Thank you. May it please the Court, I'm Jeffrey Ehrlich on behalf of the appellant OEA. I'd like to begin by making it clear that the panel is aware that part of this case against Nutmeg and Twin City has been resolved. We understand you're the only one plus whoever gets the excess. The two of you are still left, but it's the same issue. The issues that OEA has against Evanston and Royal are completely different than the issues it resolved against Nutmeg. It was like two different appeals. In your case, can you tell me, the complaint wasn't served until 1998, but it was delivered, is that right? Yes. What happened, Mr. Reinhart, is that the complaint was sent, an acknowledgement of service was sent on behalf of the subsidiary Aerospace. And then Aerospace responded and forwarded a copy to Mr. Welch at the parent company, OEA. So OEA was aware of the claim in 1997 by WISE. They had actually received the complaint? Yes. And is the only issue whether in reading that complaint, they should have recognized that it was a suit against OEA? Certainly that's how Judge Levy read it. I wouldn't agree with that. How would you frame the issue? I think that they have to look at both the complaint and then. I just said how would you frame the issue? I think that the key issue is whether in the Evanston policy, the standard is simply an objective one, as Evanston says, about whether the complaint somehow indicates there's a suit against OEA itself or whether, as Judge Levy found, that you have to look at a reasonable insured standard to know whether, based on all of the information that was available, which would be the complaint and the absence of service and the subsequent events, the entire constellation of evidence available. You made it pretty clear that there was a product's liability claim, right? There was a product's liability claim. It couldn't have been against OEA Aerospace, could it? They didn't manufacture it. Well, no, they did manufacture it. OEA, I thought, manufactured it. No, Your Honor. Everything that happened, everything that happened. That's why part of the confusion is that the parent had gotten out of this business over a year before, and there was a contract with the Air Force, and all production, everything got transferred to the subsidiary over a year before. The parent was not in that business anymore. The parent didn't make it. The parent didn't do anything. Ultimately, the only finding of liability when the case went to trial is that the parent was somehow negligent in instructing the subsidiary about how to do the changeover and how to operate the business. But all of the actual production, everything was owned by the subsidiary. And so in our belief, that's why the parent did not understand that this was a claim against the subsidiary. Suppose somebody sued you for an automobile accident or an automobile collision, and you were in New York at the time, and you knew it couldn't have been you, or you couldn't have been in any way responsible. Don't you have an obligation to notify the insurance company that you've been sued, even if it has no merit? Well, under this policy, the reporting requirement is to make reporting as soon as reasonably practicable. And this circuit's It's a different question. Is it reasonably practical to notify them? Well But aren't you required to notify them whenever a claim has been made against you? The policy says that you are, but I think that that sort of goes back to the fundamental question of whether you know that the claim's made against you. Oh, that's right. No, no, I said my question was, aren't you required to notify the insurance company when you know the claim has been made against you? Yes. Okay. So the question then is, when you get a complaint that names you, don't you know a claim has been made against you? Technically, this complaint does not. It says You know, technically is a word that doesn't add much. Most of law is technically. Well, Your Honor, the actual name of the company is not in the form complaint. OEA isn't there? The company is called OEA, Inc., and it's not referred to in the form complaint as OEA, Inc. So, okay. So you say you didn't know that it was really against OEA, Inc., because it only said OEA. That's right. And that in the context, all of OEA's subsidiaries were all called OEA Aerospace, OEA Pyrotechnic, OEA There were two different parties, OEA and OEA Aerospace. Yes. Although it wasn't clear. I mean, if you don't, if it doesn't say OEA, Inc., now there's an inference that they must have meant OEA, Inc. when they just said OEA, as opposed to some other OEA entity. Well, let's say you do need an inference. Is that No, but the reason, though, they say that because on the next page they check because, you know, we don't know the form of the organization. Right. I mean, any reasonable person would know it's directed against OEA, especially if it names OEA Aerospace separately. It doesn't say Inc., but, you know, the next box on the next page, it's checked. Each defendant is OEA is a business organization form unknown. Yes. Well, how can you say, well, that doesn't name OEA? I mean, that's, you know, to me, like an idiot's response. Your Honor. When you're doing your best with those lousy cases. Your Honor, if any reasonable person or if that's an idiot's response, then I have very little to talk about. You have very little to talk about. You know, do you have any other argument? The only, if the court's position is that as a matter of law, the fact that it says OEA means and put OEA, Inc. on notice and no reasonable juror could find to the contrary, then I can't argue that. No, it's not. You know, it's just that if you use, see, I think we're supposed to use, you know, an objective reasonable person standard. Yes. I mean, what other conclusion can you come to? Well, I'm glad you asked, because I think that in with given the context of the way this company was structured, the way this claim came to light, OEA was never served. There was never an indication to OEA. But they were trying to. The policy doesn't say, you know, you don't have to give us notice until you're served with summons and complaints. Well, Judge Teshima, the. Notice of a complaint, you know. The definition of claim specifically references that service is a claim. Service of a complaint, a civil complaint or arbitration. I don't think so. Show me that in the policy. I'm not saying it's the exclusive method. No, it doesn't. No, it's one of the ways. It specifically references that if you get served. That's one of the ways you can treat it as the only way. No, I'm not. I'm. That seems to be your argument, because they weren't served. You know, they didn't get notice. I'm suggesting. You know, almost idiot argument. I really I don't want to be before this court making what you think are idiot responses. I'm I'm I'm trying to articulate. Yes, you can. I'm trying to articulate. I think that a reasonable jury, given the facts that were available here, based on Mr. Welch's declaration. Mr. Welch worked for OEA. He was served on behalf of aerospace only with the Shugart complaint. There was never any indication. He did not understand. And his declaration is very specific. I did not understand that this form complaint was intended to be against OEA. I thought that the reason that there were two entities named is because the plaintiff's lawyer, Mr. Krantz, did not know the right way to identify the subsidiary. And was trying by calling it OEA and OEA Aerospace to identify the subsidiary, which was the only entity actually involved in the business. That was his understanding. And OEA is separately named in the complaint. OEA is separately named from OEA Aerospace. That is correct. What does this fellow do? He was the director of for of personnel and security for OEA. The parent. So he treated what he treated as a worker's company. Yes, because that's what he's familiar with. Right. Evidently. Just like, you know, as they say, every man with a hammer holds a second nail. That's right. So he's saying, you know, this looked like a worker's comp complaint. He thought it was a worker's comp claim. He tendered it to the agent for the worker's comp carrier. I would point out, though, that the absence of service on the parent is significant. And the fact that the plaintiff's lawyer, Mr. Krantz, filed a declaration stating that when he served Aerospace, he thought he was serving. He didn't seem to understand the difference in that he had later discussions. This is in the record with counsel for Aerospace. He was saying that because of the worker's exclusivity bar, that he was considering having to add OEA to the claim. I think that there's evidence in the record that suggests that the plaintiff's lawyer didn't understand that he had sued both entities. And that's consistent with OEA's understanding. So I think that Judge Levy got the standard correct, that it is a reasonable person's standard, and evidently was a reasonable standard. If it were what did this gentleman who's familiar with worker's comp cases think, he'd have a much better argument. Yes. I understand. It's just a reasonable insured standard. The only other thing before I lose all my time for rebuttal, there was an award of prejudgment interest. And I don't think there's no case that holds under California law that when an insurance company looks at a complaint and thinks there's potential coverage and they defend, as they're required to, that at the point where then they decide or they obtain an adjudication that there was no coverage, that that means that the right was vested back when they started to pay and that they get prejudgment interest. There are district court cases affirmed by this circuit that have held that there's no right to prejudgment interest. And simply put, we don't think that at the time that the judgment about coverage or potential coverage was made that anyone could say that the right not to pay was vested. Evanston paid $1.6 million. And from a policy standpoint, Evanston's position as well, if insurers don't know that they're going to get prejudgment interest, they'll be less likely to defend. And I think the response to that is, first, that the law is pretty clear about what your obligations are in California about defending if there's a potential coverage. And second, if there is a cost here of potential loss of interest if you're defending and then it turns out that you get reimbursement, that that's a cost that insurers can factor into their rate making and can spread it across all of their insurers and build into their policies. It shouldn't fall exclusively on the particular insured when there is potential coverage. Finally, the Buss case makes it very clear that with the duty to defend, when it's extinguished, it's extinguished prospectively only. And in essence, the award of prejudgment interest treats it like it was extinguished retroactively. So with that, I'd like to reserve my last two minutes and 48 seconds. Thank you. Good morning, Your Honors. I'm Sean Seleg. I represent Evanston Insurance Company. And I will be presenting the argument for both of the remaining appellees. So that would include the successor to Royal Insurance, as it's referred to in the briefs. I don't have much to add on the coverage question based on the court's questions. I will say it's clear that the district judge was correct. The standard for whether a claim was made here is what a reasonable insured would have perceived upon receiving the complaints. Service is not required in order for the insured to receive the complaints. And there are just any number of reasons we've highlighted in the briefs about why any reasonable person reading that complaint would understand that both OEA and OEA Aerospace were named as defendants. Let me address briefly the prejudgment interest question. In preparing for argument, I noticed that, in fact, there is a Ninth Circuit case, a published Ninth Circuit case that we cited that really provides the relevant test. That's the Highlands case. And it refutes what Mr. Ehrlich just said because that case says that if there's a legal dispute about the plaintiff's entitlement to a sum of money, then that's the type of situation in which prejudgment interest is allowed. The situation in which prejudgment interest is not permitted is when there's a factual dispute about what the damages were. So here we have a paradigmatic situation for when prejudgment interest is allowed. Evanston made payments. It issued checks. There's no dispute about the amount of the checks, the date they were paid, and so on. So it's just a simple matter of arithmetic to calculate the prejudgment interest. That's when the California cases are clear that prejudgment interest is allowed. The Ninth Circuit has recognized that basic distinction in the Highlands case. So what the Court is left with on OEA's appeal on the prejudgment interest issue is the idea that prejudgment interest is available to apparently every litigant except insurance companies. The problem with that argument is it directly conflicts with the statutory language because California Civil Code, Section 3287A, says very clearly, and I quote, that every person is entitled to prejudgment interest. So in order to find an exception of the kind OEA is positing, the Court would essentially have to rewrite the statute. And as the Court is well aware, this is a California state law issue, and the California Supreme Court is rigorous about following the language of statutes, unless, of course, there's a constitutional challenge, which there is not in this case. So there really is no OEA's argument that there's an exception to that statute for claims by insurers for prejudgment interest. It just has no legs. Let me add one more thing just in response to what Mr. Ehrlich presented this morning, which is he referred to the bus case. That's the California Supreme Court case that says when an insurer has paid defense costs to defend a claim subject to a reservation of rights, subject to the carrier's view that the claim is not actually covered by the policy, that the carrier has the right to seek reimbursement of the amounts expended if there was, in fact, no coverage. And so in this case, it is undisputed in front of this Court that Evanston is entitled to reimbursement. And if you look at the bus case, that means there was no potential for coverage. The bus case goes into some detail about how an insurance contract is a bargain between the insured and the insurer, and the very reason that the reimbursement is allowed is that the California Supreme Court held in that case that the insurer was not paid, it did not bargain to take the risk of just paying out money to the insured that's not required by the policy. And so the Court said that's the reason that in this sort of situation the insurer has the right of reimbursement. So to try to use that case to read some kind of implied exception into the plain text of Section 3287, the Prejudgment Interest Statute, which applies to all kinds of cases, not just insurance cases, it just doesn't work. It actually contradicts all of the rationale of the bus case if that case is studied closely. And unless Your Honors have any questions, then I would be prepared to say no. I have a question, except for clarification, what was that first case you cited early on? The Hyland's case, Your Honor. Is it in your brief? It is in the brief. Hyland? Hyland's Insurance v. Continental Casualty, 64F 2nd 514. Thank you. Okay, thank you, Your Honor. The case just argued will be submitted. The Court will stand in recess to the day.
judges: Hug, Reinhardt, Tashima